UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEDRO CRUZ,

        Plaintiff,

v.                                                                    Case No. 8:22-cv-1502-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

## I.

### A.    Procedural Background

Plaintiff filed applications for a period of disability, DIB, and SSI (Tr. 99, 118, 280–84). The Social Security Administration ("SSA") denied Plaintiff's claims

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

both initially and upon reconsideration (Tr. 164–70, 179–91).   Plaintiff then requested an administrative hearing (Tr. 193–94, 209–14).   Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 49–80). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7–21). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6).  Plaintiff then timely filed a complaint with this Court (Doc. 1).   The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1967, claimed disability beginning January 6, 2020 (Tr. 284, 304).  Plaintiff completed one year of college, and his past relevant work experience included work as forklift operator and truck driver (Tr. 71, 299).  Plaintiff alleged disability due to type 2 diabetes, depression, and two right eye surgeries (Tr. 298).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since January 6, 2020, the alleged onset date (Tr. 13).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: poor controlled glaucoma in the right eye, status post three retina attachment surgeries; diabetes mellitus; depression; and anxiety (Tr. 13).  Notwithstanding the noted impairments,

the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following limitations:

> no more than occasional climbing of ladders, ropes, and scaffolds; frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; avoid concentrated exposure to extremes in temperatures, both heat and cold; avoid concentrated exposure to wetness, vibration, fumes, odors, dust, gases, and pulmonary irritants; avoid even moderate exposure to workplace hazards, defined as moving mechanical parts and unprotected heights; has monocular vision and is blind in the right eye; therefore, cannot operate machinery or motorized vehicles; limited to positions requiring frequent or less in depth perception, field of vision, near acuity, and far acuity; limited to positions requiring occasional or less accommodation as defined in the DOT; limited to no high stress work, defined as no fast pace production quotas; no job that would typically require conflict with others; and not responsible for the safety of others as the primary function of the job

(Tr. 15).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 19, 71–73).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the

national economy, such as a cleaner/housekeeper, laundry sorter, and greeter/host (Tr. 19–20, 73–75).    Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 20).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related

functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the claimant cannot perform the tasks required of his prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The

Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred in his RFC assessment by failing to properly evaluate (1) Plaintiff's visual limitations, and (2) Plaintiff's mental limitations. For the following reasons, remand is warranted on Plaintiff's second assignment of error.

At step four of the five-step sequential evaluation process, an ALJ must determine the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. A claimant's RFC is the most work the claimant can do despite any limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In formulating a claimant's RFC, the ALJ must "consider all of [the claimant's] medically determinable impairments . . ., including [the claimant's] medically determinable impairments that are not 'severe.'" *Id.* §§ 404.1545(a)(2), 416.945(a)(2). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (explaining that administrative review

must be of the entire record; accordingly, the ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).  A claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Beegle v. Comm'r of Soc. Sec. Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.").

### A.     The ALJ's Evaluation of Plaintiff's Visual Impairments

Plaintiff argues that the ALJ's RFC analysis failed to properly assess Plaintiff's visual impairments (Doc. 18 at 3–8).  Plaintiff makes two specific arguments.  First, he contends that the ALJ erred when he translated the State agency administrative findings of "limited" depth perception, field of vision, accommodation, near acuity, and far acuity to mean "frequent use of depth perception, field of vision, near acuity, and far acuity" (Doc. 18 at 5–8).  Second, he argues that the ALJ erred in using the term "frequent" to describe his visual limitations, as "it is unclear how the ALJ's usage of 'frequent' relates to vision problems" (*id*.).  The Commissioner responds that the ALJ's RFC assessment adequately accounted for Plaintiff's visual limitations (Doc. 21 at 6–17).  Additionally, the Commissioner argues that even if the ALJ failed to describe the full extent of Plaintiff's visual limitations, such error is harmless because two of the occupations that the VE identified at step five of the sequential evaluation process

do not require near or far acuity, field of vision, or depth perception (Doc. 21 at 5–6).  The Court agrees with the Commissioner.

As part of his RFC assessment, the ALJ determined that Plaintiff had monocular vision and was blind in the right eye, and therefore could not operate machinery or motorized vehicles (Tr. 15).  The ALJ limited Plaintiff "to positions requiring frequent or less in depth perception, field of vision, near acuity, and far acuity" and "positions requiring occasional or less accommodation as defined in the DOT" (Tr. 15).

In making this finding, the ALJ considered all of the evidence of record, including Plaintiff's testimony and function report, activities of daily living, objective medical records, and prior administrative medical findings.

First, the ALJ considered Plaintiff's subjective complaints, including his hearing testimony and function report.   The ALJ acknowledged Plaintiff's testimony "that he has had ongoing problems with his vision preventing him from work" (Tr. 16; *see also* Tr. 307).  Plaintiff "testified that he [was] unable to see from his right eye[,] . . . ha[d] vision in the left eye and [was] able to read, but testified that this can cause him to develop a headache" (Tr. 15; *see also* Tr. 16, 63, 312).  Plaintiff reported that he "could complete a wide variety of activities of daily living such as taking care of her [sic] personal care, going to church, and watering his plants" (Tr. 16, 308–11).  The ALJ noted that "[a]t the time of the hearing, [Plaintiff] testified that he was not taking any medications for his eyes[,] . . . [and] he indicated

that he was not given any limitations or restrictions related to his vision" (Tr. 16, 69–70).

Next, the ALJ considered the medical evidence, noting that physical examination was consistently unremarkable (Tr. 16, 386, 480). The ALJ noted that in January 2020, Plaintiff "presented with complaints of loss of vision in the right eye" (Tr. 17, 385). After being diagnosed with retinal detachment of the right eye, Plaintiff underwent two corrective surgeries in January and February 2020 (Tr. 17, 413–14, 417–18, 421–22, 443). The ALJ noted that although Plaintiff reported eye pain after the second surgery, he continued to be treated with prescription eye drops, and "[b]y April 2020, [Plaintiff] reported no eye pain" (Tr. 17, 462, 465, 468, 472). And in May 2020, when Plaintiff presented to his primary care physician for a physical checkup, "[t]he physical examination was unremarkable" (Tr. 17, 484). Later that month, "[Plaintiff] underwent a third eye surgery to remove retained silicone oil" and thereafter, he "reported continued decreased vision in the right eye" (Tr. 17, 489, 506). The ALJ noted that "[i]ntraocular pressure was elevated[,]" and while Plaintiff "had been intermittently on maximum medical therapy for his increased intraocular pressure[,] . . . [his treating physician] noted that [Plaintiff] had many visits where compliance issues had resulted in the increased pressure" (Tr. 17, 507, 516).

The ALJ next noted that in July 2020, Plaintiff drove himself a distance of one mile to a psychological consultative evaluation and reported that "he [could] take [sic] of his own personal care, but c[ould not] sweep, mop, or vacuum (Tr. 17,

503–05).   In August 2020, Plaintiff presented to Brandon Eye Associates for an ophthalmological consultative examination (Tr. 17).  The ALJ noted that Plaintiff's "best corrected visual acuity in the right eye was 20/200 in both near and far[,]" but "the best corrected visual acuity in the left eye was 20/30[,]" and Plaintiff "was diagnosed with poorly controlled glaucoma of the right eye" (Tr. 17–18, 534–35).

Finally, the ALJ considered and found persuasive the prior administrative medical findings (Tr. 18, 92–93, 111–12, 133–34, 155–56).  On August 12, 2020, and November 4, 2020, respectively, David Shafer, M.D., and Paulette Johnson, M.D., rated Plaintiff's visual limitations as "limited" with respect to Plaintiff's right eye near and far acuity, depth perception, accommodation, color vision, and field of vision (Tr. 92–93, 111–12, 133–34, 155–56).  The ALJ discussed all of this evidence and crafted an RFC supported by substantial evidence.

Plaintiff challenges the ALJ's RFC determination, arguing that the State agency's assessment of "limited depth perception, field of vision, near acuity and far acuity" was unclear and therefore, "[i]t is unknown how the ALJ determined [the] functional limitations" (Doc. 18 at 5–6).  According to Plaintiff, in the absence of an adequate medical assessment of Plaintiff's visual impairments, "the ALJ was not free to 'wing' it with an imprecise and unclear statement of Plaintiff's vision limitations" (*id.* at 6).

As an initial matter, the State agency reviewing physicians' assessment of "limited" with respect to Plaintiff's vision limitations is not inconsistent with the ALJ's use of the term "frequent" in the RFC.  Indeed, as one court has explained,

"[the State agency physician's] assessment that Plaintiff is 'limited' with respect to her vision signifies that Plaintiff has a severe visual impairment, but is not intended to indicate what degree of functional limitation Plaintiff's visual impairments would impose in a work setting." *Moore v. Berryhill*, No. CIV-17-943-STE, 2018 WL 2375697, at *3 (W.D. Okla. May 24, 2018).   After considering all of the evidence, the ALJ properly translated the State agency prior medical findings into concrete RFC restrictions that Plaintiff "has monocular vision and is blind in the right eye; therefore, cannot operate machinery or motorized vehicles" and limited Plaintiff "to positions requiring frequent or less in depth perception, field of vision, near acuity, and far acuity" and "to positions requiring occasional or less accommodation as defined in the DOT" (Tr. 15).   Moreover, although Plaintiff cites to the new regulatory framework for evaluating medical opinions, (*see* Doc. 18 at 4–5 (citing 20 C.F.R. § 404.1520c)), he does not explicitly challenge the ALJ's evaluation of the persuasiveness of the prior administrative medical findings.   *See* 20 C.F.R. §§ 404.1520c, 416.920c.   Therefore, the challenge is waived.   *See, e.g.*, *Sanchez v. Comm' r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (noting that the plaintiff waived arguments, including that the ALJ failed to afford proper weight to medical opinions, by not explicitly challenging the ALJ's findings); *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (finding that a plaintiff's perfunctory argument was abandoned).

Furthermore, as explained above, in crafting Plaintiff's RFC, the ALJ thoroughly discussed the medical records and other evidence, including Plaintiff's

subjective allegations and activities of daily living, and his decision is supported by substantial evidence.   To the extent Plaintiff challenges the ALJ's authority to determine Plaintiff's RFC in the absence of a functional limitation assessment by a medical professional, the SSA instructs that the ALJ, not a physician, ultimately determines a claimant's RFC.   *See Buley v. Comm'r of Soc. Sec.*, 739 F. App'x 563, 569 (11th Cir. 2018) ("Although an ALJ will consider a treating source's opinion on the claimant's residual functional capacity, the final responsibility for deciding this issue is reserved to the Commissioner."); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (finding that "the ALJ did not 'play doctor' in assessing [the claimant's] RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [the claimant's] RFC"); *Kopke v. Astrue*, No. 8:11-cv-1197-T-30TGW, 2012 WL 4903470, at *5 (M.D. Fla. Sept. 26, 2012), report and recommendation adopted, 2012 WL 4867423 (M.D. Fla. Oct. 15, 2012) ("If the plaintiff is arguing that the law judge's determination of the plaintiff's residual functional capacity must 'match' the opinions of a medical source, that contention is unpersuasive, as the responsibility for assessing the plaintiff's residual functional capacity rests with the law judge.").

Consistent with these decisions, the Court rejects Plaintiff's argument that the ALJ erred in failing to rely on a medical source opinion to assist in his RFC

evaluation.[2]  The ALJ properly fulfilled his duty under the applicable regulations to assess Plaintiff's RFC based on all of the evidence of record.

Plaintiff additionally argues that the ALJ erred in quantifying his visual limitations in terms of frequency, contending that "it is unclear how the ALJ's usage of 'frequent' relates to vision problems" (Doc. 18 at 5).  In support, Plaintiff cites *Reed v. Berryhill*, No. 8:17-cv-679-T-DNF, 2018 WL 4520363 (M.D. Fla. Sept. 21, 2018), and *Gainey v. Comm'r of Soc. Sec.*, No. 6:12-cv-1579-ORL-DAB, 2014 WL 505117 (M.D. Fla. Feb. 7, 2014).[3]  However, in a more recent unpublished decision,[4] the Eleventh Circuit rejected a similar argument explaining:

> Finally, [the plaintiff] characterizes the ALJ's usage of the word "frequent" as "nonsensical." It was not. The ALJ's use of the word "frequent" was with regard to "work requiring frequent near visual acuity; occasional peripheral visual acuity and frequent depth perception." And applying the term "frequent" to near acuity for describing job requirements is a part of the Dictionary of Occupational Titles. *See, e.g.*, U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991) (DOT) § 239.367-026. And of course, the ALJ may take notice of the DOT. 20 C.F.R. § 416.966(d)(1). [The plaintiff] raises no

---

[2] Moreover, contrary to Plaintiff's suggestion, the ALJ was under no obligation to order a consultative examination where, as here, the record contained sufficient evidence upon which the ALJ could make an informed decision.  *See Ingram*, 496 F.3d at 1269 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).

[3] Additionally, both cases are factually distinguishable.  In *Gainey*, the court found that "the ALJ erred in not recognizing that Plaintiff was blind in her right eye[,]" while in *Reed*, the ALJ failed to discuss a medical opinion assessing visual limitations and "provided no explanation as to how he determined Plaintiff's precise visual limitations."  *See Gainey*, 2014 WL 505117, at *6; *Reed*, 2018 WL 4520363, at *4.  In contrast, here, the ALJ considered all of the evidence, including medical assessments, recognized that Plaintiff "has monocular vision and is blind in the right eye" and "therefore, cannot operate machinery or motorized vehicles," and imposed additional limitations to account for Plaintiff's visual impairments (Tr. 15).

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  *See* 11th Cir. R. 36-2.

controlling law to suggest that the ALJ erred when it found that, at one point, Turner was able to perform "work requiring frequent near visual acuity."

*Turner v. Comm'r of Soc. Sec.*, 860 F. App'x 681, 684 (11th Cir. 2021).  As the Eleventh Circuit noted, the Dictionary of Occupational Titles (DOT) assesses vision requirements for occupations in terms of "constant," "frequent," and "occasional." For instance, Plaintiff's previous work experience as a forklift operator involves occasional near acuity and accommodation, and frequent far acuity, depth of perception, and field of vision.  *See* DOT 921.683-050, 1991 WL 688069 (4th ed. 1991).

Furthermore, "doctors assessing a claimant's functional capacity have used the terms 'frequently' or 'occasionally' to describe a claimant's near and/or far visual acuity limitations."  *Arnold v. Colvin*, No. 3:14-cv-1064-J-MCR, 2016 WL 1170907, at *3 (M.D. Fla. Mar. 25, 2016) (collecting cases).  Therefore, the ALJ did not err by using the terms "frequent" and "occasional" to describe Plaintiff's visual limitations.

Finally, even if the ALJ erred in assessing Plaintiff's visual limitations, any error was harmless because the ALJ's step five findings would be largely unaffected. The VE testified that a hypothetical person with an RFC as adopted by the ALJ in Plaintiff's case could perform the positions of cleaner/housekeeper (DOT 323.687-014), with 500,000 jobs nationally; laundry sorter (DOT 361.687-014), with 150,000 jobs nationally; and greeter/host (DOT 352.667-010), with 100,000 jobs nationally (Tr. 20, 75).  As the Commissioner points out, the cleaner/housekeeper and

greeter/host positions are not precluded by visual limitations in the areas of near acuity, far acuity, field of vision, or depth perception. *See* Cleaner, Housekeeping, DOT 323.687-014, 1991 WL 672783 (4th ed. 1991) ("Near Acuity: Not Present - Activity or condition does not exist," "Far Acuity: Not Present - Activity or condition does not exist," "Depth Perception: Not Present - Activity or condition does not exist," "Field of Vision: Not Present - Activity or condition does not exist"); Host, hostess, DOT 352.667-010, 1991 WL 672913 (4th ed. 1991) ("Near Acuity: Not Present - Activity or condition does not exist," "Far Acuity: Not Present - Activity or condition does not exist," "Depth Perception: Not Present - Activity or condition does not exist," "Field of Vision: Not Present - Activity or condition does not exist"). And even if the third identified job of laundry sorter was eliminated from consideration, the number of cleaner/housekeeper and greeter/host positions collectively account for 600,000 nationally, which constitutes a "significant number." *See Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding 23,800 jobs in national economy constituted a "significant number").

Because any error by the ALJ in his evaluation of Plaintiff's visual impairments would not contradict his ultimate findings, his decision is not due to be remanded on this basis. *See Garcia v. Comm'r of Soc. Sec.*, No. 2:19-cv-877-FTM-MRM, 2021 WL 1037856, at *14 (M.D. Fla. Mar. 18, 2021) (finding any error in failing to consider additional treatment notes and include additional visual limitations harmless "because the ALJ identified an occupation, as a

Cleaner/Housekeeping, with sufficient numbers in the national economy that Plaintiff's RFC would allow her to complete without near or far visual acuity, depth perception, color vision, or field of vision"); *Perez v. Kijakazi*, No. 21-cv-23740, 2022 WL 17094932, at *7 (S.D. Fla. Nov. 3, 2022), report and recommendation adopted, 2022 WL 17093619 (S.D. Fla. Nov. 21, 2022) (finding any error to include additional visual limitations regarding near acuity, far acuity, depth perception, and color vision in the hypothetical posed to the VE harmless where the plaintiff's past relevant work, which the VE testified that the plaintiff could perform, did not require near acuity, depth perception, or color vision, and only occasionally required far acuity); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983)).

Upon review, Plaintiff has not identified any legal error in the ALJ's assessment of his visual limitations, nor has he shown the ALJ's decision is not supported by substantial evidence.

**B.    The ALJ's Evaluation of Plaintiff's Mental Impairments**

Next, Plaintiff argues that the ALJ erred in the RFC assessment by failing to properly evaluate Plaintiff's mental impairments (Doc. 18 at 8–14; Doc. 22 at 3–4). Specifically, Plaintiff contends that the ALJ's RFC assessment did not adequately account for Plaintiff's moderate difficulties in concentration, persistence, or

maintaining pace (Doc. 18 at 9–10; Doc. 22 at 3–4).  Additionally, Plaintiff argues that the ALJ improperly crafted his own limitations regarding Plaintiff's mental impairments without a medical opinion containing a formal assessment of limitations or an RFC assessment by State agency psychologists (Doc. 18. at 11–14).  The Commissioner responds that the ALJ properly assessed Plaintiff's RFC with respect to Plaintiff's mental impairments, and substantial evidence supports the ALJ's decision (Doc. 21 at 17–24).  The Court agrees with Plaintiff that the ALJ did not adequately account for Plaintiff's moderate limitations in concentration, persistence, or maintaining pace in the RFC or the hypothetical question posed to the VE.

In *Winschel*, the Eleventh Circuit held that moderate limitations in concentration, persistence, and pace must be considered in assessing a claimant's RFC.  *See Winschel*, 631 F.3d at 1180–81*; see also Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) ("In *Winschel*, we held that an ALJ must account for any of the claimant's identified limitations in his ability to maintain his concentration, persistence, or pace, and rejected the argument that an ALJ satisfies this obligation by restricting the hypothetical questions to simple, routine tasks or unskilled work.").  However, "an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011)

(citing *Winschel*, 631 F.3d at 1181); *see also Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) ("Because the evidence showed that Washington could perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this limitation adequately addressed Washington's limitations as to concentration, persistence, or pace."); *Jacobs*, 520 F. App'x at 951 ("The ALJ's hypothetical questions to the vocational expert fully accounted for Jacobs's moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment."); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012) ("Because the medical evidence demonstrated that Scott could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments by limiting the hypothetical to include only unskilled work.").

Here, at step three of the sequential evaluation process, the ALJ found that Plaintiff had moderate limitations in his ability to concentrate, persist, or maintain pace (Tr. 14). In the RFC assessment, to account for these limitations, the ALJ restricted Plaintiff "to no high stress work, defined as no fast pace production quotas; no job that would typically require conflict with others; and not responsible for the safety of others as the primary function of the job" (Tr. 15; *see also* Tr. 19 ("due to the claimant's moderate difficulties with his ability to concentrate, persist, or maintain pace, the residual functional capacity limits the claimant to no high stress work")).

However, these restrictions do not adequately account for Plaintiff's moderate limitations in concentration, persistence, or maintaining pace.[5]   For instance, it is not clear how limiting Plaintiff to "no high stress work," and jobs that would not typically require conflict with others or responsibility for the safety of others accounts for Plaintiff's difficulties in concentration, persistence, or maintaining pace.   While these limitations may address workplace adaptation or ability to interact with others, they do not manifestly account for limitations in concentration, persistence, or pace.   *See Chavanu v. Astrue*, No. 3:11-cv-388-J-TEM, 2012 WL 4336205, at *8 (M.D. Fla. Sept. 21, 2012) ("While the limitation to 'low stress tasks' may speak to Plaintiff's ability to deal with changes in a routine work setting, it does not adequately speak to his ability to understand, carry out and remember simple instructions, or his ability to use appropriate judgment.") (citation omitted).   Nor does a restriction to "no fast pace production quotas" adequately address Plaintiff's moderate limitations in this area.   The VE testified that if Plaintiff "would be expected to be off task at least 15% of the work day where their production would be at least 15% less than would be expected by individuals in the general workforce," Plaintiff would be unemployable (Tr. 76).   Thus, eliminating

---

[5] "The category of concentration, persistence or pace refers to the 'ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.'"   *Moore v. Colvin*, No. 3:12-cv-118-J-TEM, 2013 WL 1278085, at *7 (M.D. Fla. Mar. 28, 2013) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00).

jobs requiring "fast pace production quotas" may not sufficiently account for Plaintiff's moderate limitations in concentration, persistence, or maintaining pace. *See, e.g.*, *Linda S. v. Saul*, No. CV DLB-19-661, 2020 WL 3268535, at *2 (D. Md. June 17, 2020) (finding the ALJ's restriction to "a work-environment free of fast-paced production" to account for the plaintiff's moderate limitations in concentration, persistence, and pace, warranted remand for further explanation); *Stearns v. Colvin*, No. 8:15-cv-2386-T-23TGW, 2017 WL 519248, at *4 (M.D. Fla. Jan. 5, 2017), report and recommendation adopted, 2017 WL 495833 (M.D. Fla. Feb. 7, 2017) ("I am not aware of any Eleventh Circuit case, published or unpublished, holding that under *Winschel* such [a restriction from tasks involving high production quotas or assembly lines] adequately accommodates a moderate limitation in concentration, persistence or pace.").  Nor did the ALJ explain how the assessed restrictions accommodated Plaintiff's moderate limitations in his "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings[,]" *see Moore*, 2013 WL 1278085, at *7, frustrating the Court's ability to conduct a meaningful judicial review.

Courts in this district have found similar restrictions inadequate to account for a claimant's moderate limitations in concentration, persistence, or maintaining pace.  *See Stearns*, 2017 WL 519248, at *4 (finding that a restriction from tasks "involving high production quotas or assembly lines" and reduction to low-stress work did not accommodate a moderate limitation in concentration, persistence or

pace); *Parker v. Comm'r of Soc. Sec.*, No. 6:13-cv-521-ORL-22, 2014 WL 172078, at *3 (M.D. Fla. Jan. 15, 2014) ("Since *Winschel*, Courts in this district have found that a restriction solely to low stress work or the avoidance of unusual stress in the RFC and hypothetical question does not adequately account for a claimant's moderate (as opposed to mild) limitations in concentration, persistence or pace.") (citations omitted); *Williams v. Astrue*, No. 8:11–cv–462–MCR, 2012 WL 1581460, at *6 (M.D. Fla. May 4, 2012) (finding that a limitation of "no high stress" jobs did not account for plaintiff's moderate limitations in maintaining concentration, persistence, or pace); *Adams v. Comm'r of Soc. Sec.*, No. 6:13-cv-1599-ORL-DAB, 2015 WL 1020559, at *5 (M.D. Fla. Mar. 6, 2015) (finding that a limitation to "simple one-to-two step instructions, to a low stress work environment, and to no assembly lines or production quotas," did not account for moderate limitations in concentration, persistence, and pace where "it was not based on any actual 'medical evidence' demonstrating that [the plaintiff] retained the ability to perform the tasks despite concentration difficulties"); *Haynes v. Astrue*, No. 3:11-cv-373-J-TEM, 2012 WL 4466478, at *8 (M.D. Fla. Sept. 27, 2012) ("Limiting [the plaintiff] to a low stress job says nothing about his moderate difficulties in concentration, persistence or pace[.]"); *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1304 (M.D. Fla. 2011) (finding restrictions "to avoid unusual stress" and to "simple tasks" did not account for the plaintiff's moderate limitations in maintaining concentration, persistence, or pace).

   The Commissioner argues that "[t]he ALJ sufficiently accommodated the moderate limitation in Plaintiff's ability to concentrate, persist, or maintain pace by

including in the RFC a restriction of 'no high stress work, defined as no fast-paced production quotas; no job that would typically require conflict with others; and not responsible for the safety of others as the primary function of the job'" (Doc. 21 at 18).  In support, the Commissioner cites two unpublished Eleventh Circuit cases (*id.* at 18–19 (citing *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 836–37 (11th Cir. 2018); *Kent v. Acting Comm'r of the Soc. Sec. Admin.*, 651 F. App'x 964, 966–68 (11th Cir. 2016))).  However, in both of those cases, the ALJ included restrictions to simple, repetitive work, which, as discussed above, the Eleventh Circuit has found sufficient to account for moderate difficulties in concentration, persistence, or maintaining pace, if, despite those deficits, the medical evidence demonstrates ability to perform such work.  *See Duffy*, 736 F. App'x at 836 ("The ALJ determined that . . . [the plaintiff] had RFC to perform a full range of work at all exertional levels, but was 'limited to *simple, unskilled repetitive work*' with only 'brief, superficial and occasional' contact with the general public and with co-workers.") (emphasis added); *Kent*, 651 F. App'x at 967 ("The ALJ further concluded that [the plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels except . . . that Kent: (1) 'is limited to performing *simple repetitive tasks*' . . .") (emphasis added); *see also Washington*, 503 F. App'x at 883 ("The ALJ also explicitly and implicitly took into account [the plaintiff's] moderate limitations in maintaining concentration, persistence, or pace by including the restrictions that [the plaintiff] was limited to performing only *simple, routine repetitive tasks* with up to three-step demands, and only occasional changes in the work setting, judgment, or decision

making.") (emphasis added).  The ALJ included no such limitations here either in the RFC or the hypothetical question posed to the VE, which reflected the ALJ's RFC assessment.  *See Sowards v. Comm'r of Soc. Sec.*, No. 6:13-cv-76-ORL-GJK, 2014 WL 688053, at *3 n.5 (M.D. Fla. Feb. 21, 2014) (explaining that a limitation to low stress jobs "is different than the limitation to simple and routine work").

The Commissioner also argues that "Plaintiff failed to cite medical findings or other acceptable evidence establishing that he actually had work-related concentration findings" (Doc. 21 at 21).  The Commissioner points to evidence that the ALJ considered, appearing to suggest that Plaintiff had perhaps less than moderate limitations (Doc. 21 at 19–20).  However, this Court is bound by the ALJ's decision finding that Plaintiff had a "moderate" limitation in this area. Indeed, while the State agency psychological consultants opined that Plaintiff had only mild limitations in his ability to concentrate, persist, or maintain pace (*see* Tr. 89, 109, 129, 151), the ALJ found their overall assessments "to be unpersuasive[,]" as "not supported by or consistent with the more recent evidence available at the hearing[,]" and concluded that Plaintiff was more restricted (Tr. 18). As such, the ALJ was required to account for Plaintiff's moderate limitation in concentration, persistence, or maintaining pace, or otherwise explain, based on the medical evidence, why Plaintiff's "ability to work was unaffected by this limitation."  *Winschel*, 631 F.3d at 1181.  Because the ALJ did not sufficiently account for Plaintiff's limitations, either explicitly or implicitly, this case must be remanded for the ALJ to further consider Plaintiff's mental limitations in

concentration, persistence, or maintaining pace as they relate to the RFC assessment. Accordingly, the Court will not address Plaintiff's remaining argument challenging the ALJ's RFC assessment of his mental limitations. However, to the extent Plaintiff argues that the ALJ was required to rely on a particular medical opinion in crafting his RFC, as discussed above, "[t]he Commissioner's regulations do not require the ALJ to base his RFC finding on an RFC assessment from a medical source. Therefore, the failure to include such an opinion at the State agency level does not render the ALJ's RFC assessment invalid." *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011); *see also*

*Lingenfelser v. Comm'r of Soc. Sec.*, No. 6:16-cv-921-ORL-DCI, 2017 WL 4286546, at *12 (M.D. Fla. Sept. 27, 2017) ("the law of this Circuit does not require a functional assessment by a treating or examining medical source as some sort of prerequisite to finding that an RFC is supported by substantial evidence"). Nonetheless, upon remand, the ALJ should consider Plaintiff's remaining argument, and whether a consultative examination is appropriate to assess Plaintiff's mental impairments.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1.   The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2.   The Clerk is directed to enter final judgment in favor of the Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 15th day of August, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record